UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> Legacy Global Sports, L.P., et. al., <br><br> Debtors. | Chapter 7 <br><br> Case No. 20-11157 (JEB) <br><br> (Jointly Administered) |

OPPOSITION OF JOSEPH M. BRADLEY, PETER D. BRADLEY
AND ALEXANDER ZECCA
TO THE MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF ORDER
AUTHORIZING AND APPROVING (I) STIPULATION OF SETTLEMENT
BY AND BETWEEN CHAPTER 7 TRUSTEE AND JEFFERSON
RIVER INVESTORS I, LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE AND (II) ALLOWANCE AND PAYMENT OF
INTERIM REQUESTS FOR COMMISSIONS, FEES AND EXPENSES BY THE
TRUSTEE AND HIS PROFESSIONALS PURSUANT TO 11 U.S.C. § 506(c)

Joseph M. Bradley, Peter D. Bradley and Alexander Zecca, parties-in-interest in the above-referenced Chapter 7 proceeding (collectively the "Bradley Parties"), hereby oppose and request that this Court deny the *Motion by Chapter 7 Trustee for Entry of an Order Authorizing and Approving (I) Stipulation of Settlement by and between Chapter 7 Trustee and Jefferson River Investors I, LLC[1] pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and (II) Allowance and Payment of Interim Requests for Commissions, Fees and Expenses by the Trustee and His Professionals pursuant to 11 U.S.C.§ 506(c)* (the "Motion"). As grounds therefor, the Bradley Parties state the Stipulation is not in the best interests of the estate in as much as its releases

---

[1] Jefferson River Investors I, LLC is referred to hereinafter as "JRC". JRC was at relevant times hereto directed by its Manager, Jefferson River Capital, LLC ("Capital"). JRC and Capital shared at relevant times hereto overlapping officers, director or control persons. For all legal and practical intents and purposes, JRC and Capital are the same.

JRC from potential significant claims and, seemingly, assigns estate property to JRC without due diligence or consideration. Such outcome is neither fair nor reasonable.

Introduction

JRC is the reason Debtors are in Chapter 7. JRC ran the Debtors into the ground, all the while reaping financial benefits up until the last days of the Debtors' operations. JRC planned for the Debtors (at least certain of them) to file for Chapter 11 in Delaware in order to maximize its corporate raid, but JRC was rightfully beaten to this Court by various claimants here. Now, by way of the proposed Stipulation, the Trustee has ordained JRC the estate's unquestioned senior secured lender and advances JRC's interests above every other creditor. The Trustee has disregarded viable causes of action against JRC -- causes of action that would benefit the entire estate -- and proposed a settlement to waive meritorious and valuable claims against those parties and hand JRC over estate property for next to nothing.

On July 7, 2020, the Bradley Parties' counsel ("Bradley's Counsel") contacted the Trustee via email and alerted him to a related Suffolk County, Business Litigation Session Action brought against, among others, JRC and JRC's principals[2] (the "BLS Action"). See Exhibit 1 appended hereto, which is a true and accurate copy of the subject communication; see also Exhibit 2 appended hereto, which is a true and accurate copy of the BLS Action's Verified Complaint (sans exhibits), which Bradley's Counsel provided to the Trustee.[3] On August 20, 2020, Bradley's Counsel sent a formal request to the Trustee that his office prosecute various claims -- including equitable subordination and breaches of fiduciary duty and conversion -- for the betterment of the

---

[2] Namely, David Wittels, Richard Dresdale and Michael Somma (the "JRC Principals").

[3] In the spirit of efficiencies, the Bradley Parties incorporate Exhibit 2 as if stated in full herein.

2

Debtors' estates. See Exhibit 3 appended hereto, which is a true and accurate copy of the subject communication.[4] On August 28, 2020, the Bradley Parties filed their Proof of Claim and supporting documentation in connection with nearly $4MM owed on a certain defaulted Membership Interest Purchase Agreement and related Notes. Attached to the Proof of Claim was, among other things, the BLS Verified Complaint, with Exhibits A - AA. To date, the Trustee has not contacted the Bradleys' Counsel in response to the above-referenced outreach or Proof of Claim, or otherwise sought data or interviews to determine the viability of claims against JRC.

The Trustee's present conduct is indefensible. The facts here are nearly on all fours with *In re New England Confectionery Company, Inc.*, Case No. 18-11217, Adversarial Proceeding No. No. 19-01011 (the "NECCO Adversarial Proceedings"). Claims the Trustee pursued there for the benefit of the entire estate lie here as well. The Trustee has either been grossly misled by JRC or has simply elected to take the easiest path forward by not fighting for all creditors.

Response to the Motion's Averments

In specific response to the enumerated averments in the Trustee's Motion, the Bradley Parties state as follows:

- Paragraphs 1-3 are admitted.

- Paragraphs 4-8 are apparently derived from language found on specific cited websites, which websites speak for themselves. Otherwise admitted.

- Paragraphs 9-12 are admitted.

- The Bradley Parties do not have sufficient knowledge or information to either admit or deny Paragraphs 13-22 of the Trustee's Motion.

---

[4] In the spirit of efficiencies, the Bradley Parties incorporate Exhibit 3 as if stated in full herein.

3

- In response to Paragraph 23 and 24 of the Trustee's Motion, the Bradley Parties state that the summary of the proposed settlement stated therein is inaccurate and incomplete, and in particular fails to state that the proposed settlement calls for a full release of all claims against JRC.

Argument in Opposition

The Bradley Parties adopt in full the "Relevant Facts" of and otherwise join in the *OBJECTION BY JOHN ST. PIERRE TO TRUSTEE'S MOTION FOR ENTRY OF ORDER AUTHORIZING AND APPROVING STIPULATION OF SETTLEMENT* filed on August 18, 2021 ("St. Pierre's Objection"), and further state as follows:

JRC was both an owner / equity holder and a lender of Debtors Legacy / LGS[5], and JRC Principals controlled the GPS[6] Board and the Legacy / LGS Board. JRC is an insider. In those controlling capacities, JRC directed the Debtors' businesses in manners that harmed the Debtors and their creditors but benefitted JRC and its financial interests.

For example, JRC and the JRC Principals dictated or directed: (i) meritless and outrageously expensive legal strategies aimed at unlawfully avoiding certain Debtor creditors / obligations and quieting others who questioned certain Debtors' management; (ii) personnel and financial decisions that materially impacted Debtors' performance leading to circumstances that ultimately resulted in the Debtors' involuntary filing; and (iii) LGS to breach its fiduciary duties to the Bradley Parties, interference with contractual relationships with the Bradley Parties and,

---

[5] LGS is / was the majority owner / equity holder of Debtor GPS.

[6] "GPS" refers to Debtor Massachusetts Premier Soccer LLC d/b/a Global Premier Soccer.

4

separately, Joseph M. Bradley and Peter D. Bradley[7], and conversion of monies due the Bradley Parties and others, among other unlawful conduct. See Exhibit 2 and 3, generally.

Worse yet, in the months immediately preceding the involuntary filing, JRC and the JRC Principals dictated or directed: (i) the non-payment of certain of Debtors' necessary expenses (e.g., Debtor GPS's field fees, fees for past tournaments, rent, monies due goods and materials vendors) in favor of paying JRC (itself or through Capital[8]), as well as attorneys, bankruptcy consultants and others acting solely for the benefit of JRC; (ii) the planning for certain Debtors, excluding Debtor GPS / the soccer business, to wind down or otherwise cease to operate without paying creditors; (iii) the pumping of "survival capital" into GPS while management planned next steps, as early as April 2020; (iv) the development of a prepackaged Chapter 11 in Delaware to avoid the impending involuntary Chapter 7 here; (v) the misrepresentation to GPS youth soccer players and their parents about Debtor GPS's financial status and intention or ability to provide services, all the while refusing to provide refunds for programming they cancelled and continuing to collect income from partner clubs and families[9]; and (vi) the scheming to pump monies into certain Debtors, including Debtor GPS, to keep them afloat for JRC's benefit or otherwise increase its claim against the assured bankruptcy estate(s), and, relatedly, the withholding of data from

---

[7] Joseph M. Bradley and Peter M. Bradley also have filed individual Proofs of Claim for hundreds of thousands of dollars in connection with their respective GPS employment agreements. See Exhibit 2, generally (articulating in the BLS Verified Complaint the basis for interference claims) and Counts XII (BP46), XXI (BP51-52) and XXVII (BP55), for example, specifically.

[8] Capital received $110,456 as an insider. See Debtors Statement of Financial Affairs For Non-Individuals Filing For Bankruptcy, Appendix to SOFA Question 4, Docket Number 64.

[9] See Exhibit 4 hereto, which is a true and accurate copy of an example of a May 24, 2020 email from Keith Caldwell (then acting GPS CEO), done at JRC's behest, to "GPS Families" (misrepresenting, among other things, "…I want to make clear: Our club remains strong, we're confident in our future…", while myriad creditors went unpaid and staff was being furloughed).

5

supposed GPS Board Member Joseph Bradley so he could not determine the propriety of that pumping or where the monies were going. See e.g., BP74-75, 77-78, 130-131, 211-214 and 220-222 at Exhibit 5 hereto, which are true and accurate copies of GPS Board-related communications and purported lending documents from the time period leading up to this action.[10]

The Trustee has not conducted any formal discovery into the above facts or sought testimony from material GPS, LGS, Legacy or JRC CEOs, CFOs, Presidents, Board Members, principals or day-to-day personnel about JRC's impacts on Debtors or claims to be had against JRC; nor has the Trustee provided creditors the opportunity to do so (not that it should be their burden, given the Trustee's existence). Had the Trustee done so, he would have come to a far different result than the Motion and proposed Stipulation. Instead, the Trustee swept various creditors' meritorious complaints -- like the Bradley Parties' -- to the side and cut a deal solely with JRC.

The Motion is not in the best interest of the estate.

Pursuant to Bankruptcy Rule 9019(a), the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. *In re Key3Media Group, Inc.,* 336 B.R. 87, 92 (Bankr, D. Del. 2005); *In re Coram Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004); *In re Trism, Inc.,* 282 B.R. 662, 666 (B.A.P. 8th Cir. 2002). In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate. *In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997). The Court should approve a compromise, after considering all factors involved, only if it is in the best interests of the estate. *In re Hallet,* 33 B.R. 564, 565 (Bankr. D. Me. 1983).

---

[10] In addition to the other remedies discussed herein, which the Trustee should pursue, JRS's purported loans should be recharacterized as equity.

The Trustee's burden of proof is to demonstrate that the settlement and release of claims against JRC is in the best interest of the estate; the Trustee has failed to satisfy that burden. *In re Hallet,* 33 B.R. at 565 ("The parties proposing the compromise have the burden of persuading the court that the compromise should be approved"). Nor is it evident from the Motion what specific claims and litigation matters related to JRC are being compromised.[11] If the would-be waived claims and litigation matters are potential claims against JRC, including without limitation commencing preference actions against JRC and its professional advisors, as well as an adversary proceeding related to equitably subordinating JRC, then the Motion should be denied for not being in the best interest of the estate and the Trustee should proceed apace in such claims. Indeed, the Trustee has proven the ability to successfully prosecute those very claims. See generally NECCO Adversarial Proceedings. Moreover, preference actions are routine and JRC has the ability to pay its obligations.

The best interests of creditors test focuses on the interest of the entire creditor body; it does not focus on individual creditor interests. *In re Buffet Partners, L.P.,* 59 Bankr.Ct.Dec. 232, 2 (Bankr. N.D. Tex. 2014) (quoting *In re OptInRealBig.com, LLC,* 345 B.R. 277, 290 (Bankr. D. Colo. 2006)); *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 243 (4th Cir. 1994). The Motion, which benefits the very people / entity directly responsible for the Debtors' demise, is offensive when viewed in light of the known facts through the lens of all creditors (and especially though

---

[11] It is settled law in Massachusetts that the factors for approving a proposed compromise include: (1) the probability of success in the litigation being compromised, (2) the difficulties, if any, to be encountered in the matter of collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay attending it, and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *In re Lloyd, Carr and Co.,* 617 F.2d 882, 891 (1st Cir. 1980). See also Jeffrey *v. Desmond,* 70 F.3d 183, 185 (1st Cir. 1995); *In re 110 Beaver Street Partnership,* 355 Fed. 432, 436 (1st Cir. 2009); *In re. American Cartage,* 438 B.R. 1, 15 (D. Mass. 2010). The Trustee cannot satisfy the burden articulated above for the reasons addressed herein.

7

that of GPS and its founders, former directors, officers and employees of GPS). Courts have routinely denied motions where the "best interest" standard under Bankruptcy Rule 9019 is applied which contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith. *In re Kuhns,* 101 B.R. 243, 246 (D. Mont. 1989) (The court disapproved settlements when they are a "sham" and "filed as a bad faith scheme"). See *In re Healthco Intern,* 136 F.3d 45, 53 (1st Cir. 1998). Accordingly, the Court should deny here.

Equitable subordination is proper here.

With respect to equitable subordination, the test includes: (1) the claimant be found to have engaged in inequitable conduct, (2) the misconduct must have either resulted in injury to creditors or given the claimant an unfair advance, (3) the equitable subordination of the claim must not be in conflict with the provisions of federal bankruptcy law. *In re Merrimac Paper Co.,* 420 F.3d 53, 59 (1st Cir. 2005) (citing *In re Mobile Steel Co.,* 563 2d 692, 700 (5th Cir. 1997)). The remedy of equitable subordination is usually directed towards misconduct arising in three situations: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors, (2) when a third party dominates or controls the debtor to the disadvantage of others, or (3) when a third party defrauds the creditors. *In re Wolverine, Proctor & Schwartz,* 447 B.R. 1, 32 (D. Mass. 2011) (citing *In Capital Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust),* 968 F.2d 1332, 1359 (1st Cir. 1992)). The court has added, "whether the creditor is an insider of fiduciary of the debtor is fundamentally important to the level of scrutiny that courts apply to the allegations of a creditor." *Id.* If the creditor is an insider the claims are "rigorously scrutinized," whereas if the claimant is not an insider, "then evidence of more egregious misconduct such as fraud, spoilation, or overreaching is necessary." *Id.* Also, see generally, the NECCO Adversarial Proceedings.

For many of the reasons set forth above, under either the rigorous or the lesser above-articulated standards, JRC's claims should not be settled, there should be no release and JRC's claims should be equitably subordinated for the benefit of the entire estate. If equitable subordination is successful, the estate would benefit from the displacement of JRC's alleged secured $13 MM in claims.[12]

## Conclusion and Relief Requested

The Trustee has significant viable claims against JRC, claims that if pursued would benefit the entire estate. By the Stipulation, the Trustee has agreed to elevate JRC's interests above all others. The facts, Code and controlling common law here do not permit such an outcome.

WHEREFORE, the Movants request that the Court enter an order:

1. Denying the JRC Settlement Motion and otherwise reject the Stipulation, and

2. Granting such other and further relief as the Court deems just and equitable.

DATED: August 18, 2021                    Respectfully submitted,

*/s/ Lawrence G. Green*
Lawrence G. Green (BBO #209060)
BURNS & LEVINSON LLP
125 High Street
Boston, MA  02110
Tel:  (617) 345-3000
Fax:  (617) 345-3299
lgreen@burnslev.com

---

[12] Taking heed from *In Capital Bank & Trust Co.* referenced above, at a minimum, JRC's conduct and claims should be rigorously scrutinized. This scrutiny has not happened to date.   Why the Trustee believes waiving certain rights, settling substantial claims and not pursuing, among other claims, the equitable subordination of JRC is in the best interest of the estate must be explained to the Court as well as all other creditors.

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2021, I caused to be served a true and accurate copy of the foregoing document upon counsel as follows through the Court's CM/ECF System and by First Class Mail to the following:

Amy Amelkovich
c/o Darla Mullner
241 Sussex Lane
North Aurora, IL 60542

Lama Chebaclo
4511 Moorland Ave
Edina, MN 55424
Melanee Chmiel
11494 Balsam Way
Woodbury, MN 55129

Lukas Havlicek
Pod Kaplickou 378
250 72 Predboj

Paula K. Jacobi on behalf of Petitioning Creditor Bay State Hockey, LLC
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

Paula K. Jacobi on behalf of Petitioning Creditor KMD Hockey, LLC
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

Paula K. Jacobi on behalf of Petitioning Creditor Lynch Hockey, LLC
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

Paula K. Jacobi on behalf of Petitioning Creditor Pro Hockey Development (2015), Inc.
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

Paula K. Jacobi on behalf of Petitioning Creditor Super Series AAA, LLC
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606

Craig Jalbert
Verdolino & Lowey, P.C
124 Washington Street
Foxboro, MA 02035

Jason Murphy
85 Candia Road
Manchester, NH 03109

Paul E. Saperstein Co., Inc
Auctioneers/Appraisers
c/o Michael Saperstein
148 State Street
Boston, MA 02109

Barry Pollack
Pollack Solomon Duffy, LLP
101 Huntington Avenue
Suite 530
Boston, MA 02199

The Siegfried Group, LLP
Leigh-Ann Raport, Senior Counsel
1201 N. Market Street, Ste 700
Wilmington, DE 19801

The Siegfried Group, LLP
c/o Richard G. Placey
Montgomery, McCracken, Walker & Rhoads
1105 N. Market Street, Suite 1500
Wilmington, DE 19801

The Siegfried Group, LLP
c/o William J. Ulrich
Vice President, Legal & HR
1201 N. Market Street, Suite 700
Wilmington, DE 19801

Scott Wilson
408 Summit Ave.
Westfield, NJ 07090

*/s/ Lawrence G. Green*
Lawrence G. Green (BBO #209060)

4826-4269-0054.1