## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MASSACHUSETTS - BOSTON

```
===============================
IN THE MATTER OF:              .   Case #20-11157
                               .
LEGACY GLOBAL SPORTS, L.P.,    .   Boston, Massachusetts
                               .   November 18, 2021
                    Debtor.    .   3:01 P.M.
===============================
```

**TRANSCRIPT OF VIDEO HEARING RE:**
**[#275] MOTION OF CHAPTER 7 TRUSTEE FOR ENTRY OF**
**ORDER AUTHORIZING AND APPROVING (I) STIPULATION**
**OF SETTLEMENT BY AND BETWEEN CHAPTER 7 TRUSTEE**
**AND JEFFERSON RIVER INVESTORS, LLC; AND (II)**
**ALLOWANCE AND PAYMENT OF INTERIM REQUESTS FOR**
**COMMISSION, FEES AND EXPENSES BY THE TRUSTEE**
**AND HIS PROFESSIONALS RE: [274] STIPULATION**
**OF SETTLEMENT (K. CRUICKSHANK);**
**[#290] OPPOSITION OF JOSEPH M. BRADLEY, PETER D.**
**BRADLEY, AND ALEXANDER ZECC (L. GREEN);**
**[#291] OBJECTION OF JOHN ST. PIERRE (J. DORAN);**
**[#2983] OMNIBUS RESPONSE OF CHAPTER 7**
**TRUSTEE (K. CRUICKSHANK);**
**[#294] RESPONSE OF JEFFERSON RIVER**
**INVESTORS I, LLC (C. BATTAGLIA);**
**[#208] LIMITED OBJECTION OF JAIME ALONSO,**
**TRAVIS BEZIO AND CARRIE WELCOME (C. DEVINE);**
**[#324] OBJECTION OF IVAN PERLANGA LAPARRA (PRO SE);**
**[#330] AMENDED STIPULATION OF SETTLEMENT;**
**[#276] JOINT APPLICATION OF:  (I) CHAPTER 7 TRUSTEE**
**FOR ALLOWANCE OF INTERIM COMMISSION; AND (II)**
**MURPHY & KING, PROFESSIONAL CORPORATION, AS**
**COUNSEL TO CHAPTER 7 TRUSTEE, FOR ALLOWANCE OF**
**INTERIM COMPENSATION AND REIMBURSEMENT OF**
**EXPENSES PURSUANT TO 11 U.S.C. §506(c) FOR**
**KATHLEEN R. CRUICKSHANK, TRUSTEE'S ATTORNEY,**

<u>Electronic Sound Recording Operator</u>:  Yvonne Woodbury

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

---

## CASCADE HILLS TRANSCRIPTION, INC.
**5001 Woodland Hills Drive, Eagle, Nebraska 68347**
**(503) 871-5566 ~ Email: hagerruthann@aol.com**

**PERIOD: 6/23/2020 TO 6/30/2021, FEE: $146,373.50,
EXPENSES: $6,110.34, FOR HAROLD B. MURPHY, TRUSTEE
CHAPTER 7, PERIOD: 6/23/2020 TO 12/28/2020,
FEE: $35,000.00, EXPENSES: $0.00 (K. CRUICKSHANK);
[#277] FIRST INTERIM APPLICATION FOR FEE AND
EXPENSES OF ACCOUNTANT TO THE TRUSTEE, CRAIG
JALBERT, PERIOD: 7/13/2020 TO 6/30/2021,
FEE: $21,470.50, EXPENSES: $2,116.04 (K. CRUICKSHANK);
[#303] SUPPLEMENTAL SUMMARY OF SERVICES AND EXPENSES
OF ACCOUNTANTS TO THE TRUSTEE
BEFORE THE HONORABLE JANET E. BOSTWICK, J.U.S.B.C.**

**APPEARANCES:**

| | |
|---|---|
| For the Chapter 7 Trustee: | CHARLES BENNETT, ESQ.<br>Murphy & King, P.C.<br>One Beacon Street<br>Boston, Massachusetts  02108 |
| The Chapter 7 Trustee: | HAROLD MURPHY, ESQ.<br>Murphy & King, P.C.<br>One Beacon Street<br>Boston, Massachusetts  02108 |
| For Jefferson River Investors I,<br>LLC: | DEBRA COHEN, ESQ.<br>CHRISTOPHER J. BATTAGLIA, ESQ.<br>Halperin Battaglia Benzija, LLP<br>40 Wall Street, 37th Floor<br>New York, New York  10005 |

Electronic Sound Recording Operator:   Yvonne Woodbury

**Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service**

**CASCADE HILLS TRANSCRIPTION, INC.**
**5001 Woodland Hills Drive, Eagle, Nebraska 68347**
**(503) 871-5566 ~ Email:  hagerruthann@aol.com**

*Page 3*
*#20-11157*
*November 18, 2021*

**APPEARANCES (Continued):**

For Joseph M. Bradley:              LAWRENCE G. GREEN, ESQ.
Burns & Levinson, LLP
125 High Street
Boston, Massachusetts  02110

Electronic Sound Recording Operator:   Yvonne Woodbury

Proceedings Recorded by FTR Gold Digital Recording
Transcript Produced by Certified Transcription Service

**CASCADE HILLS TRANSCRIPTION, INC.**
5001 Woodland Hills Drive, Eagle, Nebraska 68347
(503) 871-5566 ~ Email:  hagerruthann@aol.com

1  (At 3:01 p.m.)

2          THE CLERK:  Court is in session, the Honorable Janet

3  Bostwick presiding.

4          THE COURT:  Thank you, Ms. Brooks.  We can begin.

5          THE CLERK:  Calling case number 20-11157, Legacy

6  Global Sports, LP.  This is a hearing on the motion of the

7  Chapter 7 Trustee for an order approving a stipulation and also

8  a joint application for interim commission.

9          Could the parties please identify themselves for the

10  record starting with Attorney Cohen?

11          MS. COHEN:  Good afternoon, Your Honor.  Debra Cohen

12  of Halperin Battaglia Benzija for Jefferson.

13          THE CLERK:  And Mr. Jalbert?

14          MR. JALBERT:  Craig Jalbert for Verdolino & Lowey.

15          THE CLERK:  Attorney Battaglia.

16          MR. BATTAGLIA:  Chris Battaglia, Halperin Battaglia

17  Benzija for Jefferson River Investors as well.

18          THE CLERK:  Attorney Green.

19          MR. GREEN:  Good afternoon, Your Honor.  Lawrence

20  Green representing the Bradley parties.

21          THE CLERK:  Attorney Bennett.

22          MR. BENNETT:  Good afternoon, Your Honor.  Charles

23  Bennett on behalf of the Chapter 7 Trustee, Harold B. Murphy.

24          THE CLERK:  The Chapter 7 Trustee.

25          MR. MURPHY:  Yes, good afternoon, Your Honor.  Harry

 1  Murphy, Chapter 7 Trustee.

 2          THE CLERK:  Your Honor, I will note there's a

 3  gentleman named William Ulrich, but his video and audio are

 4  turned off, for the record.

 5          THE COURT:  All right.  Thank you.

 6          Before we begin, I know there were several other

 7  objectors.  Are you expecting them to be here, Mr. Bennett?

 8  Have you had any communications with them?

 9          MR. BENNETT:  We have not had any communications.

10  They were all served in accordance with the Court's order and

11  they all received the amended stipulation.

12          THE COURT:  Okay.  Well, I will -- I will begin.

13  Usually, that -- it may be they chose not to attend, which

14  certainly is within theirs.  It's just 303.  Sometimes

15  technology.  I'll give folks a minute or two.

16          This is a public hearing and so for those who are

17  observing that -- that's fine.  We ask that you leave your

18  video and sound off unless the Court calls on you for a

19  particular reason in which case you'd be required to put your

20  name on the record.  But it is the same as a court proceeding,

21  as Ms. Brooks advised you, as if we were in court.  So we

22  expect the same decorum from those who may be in the public

23  observing.

24          And with that, I want to thank the Trustee and his

25  counsel, as well as Jefferson.  I appreciate the efforts.  I

1  did appreciate receiving the amended stipulation with advance

2  time.  From the Court's perspective it does address my issues.

3  I might do them a little differently, but that's not the job

4  here today.  The job is whether it is sufficient when

5  considering.  So at this point, I -- before we move on to other

6  things -- before we -- I finally make my findings and rulings,

7  I will ask if there is anything you wish to add, either

8  Mr. Murphy or Bennett, with respect to the amended stipulation.

9         Today we are not debating the entire settlement.

10 I've already made my rulings on those that -- although I admit

11 they were preliminary and the only issue today is whether

12 there's anything based on the amendment.  I'll give the

13 objector an opportunity again, but simply not to repeat the

14 objections that I've already addressed, but simply whether

15 there's anything in light of the amended stipulation to

16 address.

17        So with that, Mr. Bennett or Mr. Murphy, I'm not sure

18 which one of you wished to speak.

19        MR. BENNETT:  Your Honor, we have nothing to add to

20 it.  We're satisfied with the -- we're satisfied with where we

21 stand today.

22        THE COURT:  All right.  Thank you.  So, Mr. Green,

23 with that is there anything you wish to comment on the

24 amended -- the changes in the stipulation, as I said?

25        MR. GREEN:  Thank you, Your Honor.  I believe that

1  the amended stipulation responds to the particular issue that

2  the Court raised and we appreciate the fact that the parties

3  have done that.

4         The only question that I would ask the parties to

5  represent for the record -- and I assume that this would be

6  quite obvious -- is that I would ask that both the Trustee and

7  counsel for Jefferson represent that there is no side deal as

8  to the principals and no covenant not to sue.

9         THE COURT:  Well, I'm not going to ask them to do

10  that because there is no -- any such agreement would not be

11  authorized.

12         MR. GREEN:  You've --

13         THE COURT:  I'm not going to challenge -- I'm not

14  going to assume that counsel for the Trustee and the Trustee,

15  who are a very experienced bankruptcy lawyer, would

16  intentionally defraud the Court in that way and that's what

17  you're suggesting.  And so --

18         MR. GREEN:  I -- Your Honor, with all due respect --

19         THE COURT:  -- I'm going to -- I'm going to --

20         MR. GREEN:  -- I was not suggesting that.  You

21  have -- you have satisfied my concern by your statement just

22  now, Your Honor.  I was asking them to confirm the obvious, but

23  you've now satisfied my concern.  Thank you for stating that

24  for the record.

25         THE COURT:  With all due respect, Mr. Green, I don't

1  think it was required.

2        But having said that, Mr. Battaglia, is there

3  anything you wish to say?  Again, we're simply focused on the

4  amended stipulation and --

5        MR. BATTAGLIA:  No, Your Honor, thank you.  Nothing

6  further to add.  One small little housecleaning issue was that

7  there was a typo in the very first paragraph and we discussed

8  it with the Trustee to make sure that we're all on the same

9  page.  It's on the third line down in -- on the last sentence

10 on that paragraph.  There's a reference to "debtor" and it

11 should read "debtors," so the "s" was just left off.  But other

12 than that, we are happy as is, Your Honor.  Thank you.

13        THE COURT:  That's fine.  I'll take that correction

14 on the record.  All right.

15        And Ms. Cohen, was there anything you wished to

16 state?

17        MS. COHEN:  I just wanted to clarify that that

18 mistake was actually in two locations.  It's in two locations

19 in the stip on -- it's in -- it's both in the first paragraph.

20 It says, "debtor" instead of "debtors."

21        THE COURT:  So with --

22        MS. COHEN:  Start with this.

23        THE COURT:  Thank you, Ms. Cohen.  We'll treat any

24 reference to the debtor singularly to incorporate it to be

25 intended to be the debtors, plural, within the stipulation.

1  Okay.

2          So with that, as more fully set forth on the record

3  at the hearing on October 28th and this hearing, I find that

4  the proposed settlement as reflected in the amended stipulation

5  is fair and equitable within the range of reasonableness, is in

6  the best interests of the estate, and is an appropriate

7  exercise of the Trustee's business judgment.  The objections

8  are overruled.

9          Approval of the settlement is not a mini-litigation

10  and, as more fully set forth at the prior hearing, my job is to

11  consider whether it's within the range, considering the

12  pleadings, the offers of proof at the hearings.  I find no

13  reason for an evidentiary hearing.

14          In approving the settlement with the amend -- as

15  amended, I have considered the various factors that are

16  appropriate.  I consider the probability of success in any

17  litigation.  The Trustee -- I have taken the Trustee's offer of

18  proof and the offer of proof by the objectors.  The Trustee has

19  conducted an investigation and there is no dispute in terms of

20  only minimal payments were made to Jefferson and that

21  substantial other funds were provided as equity and invested.

22          The objectors have offered test -- have offered --

23  made an offer of proof that they would have testimony that

24  other parties would disagree with how Jefferson ran the

25  business, but that is not the issue.  They've offered nothing

1  that would show a basis for inequitable conduct, which is the

2  foundation of any of the claims they're asserting, whether it's

3  equitable subordination, recharacterization or any of the other

4  nature.  They -- any litigation would have significant hurdles

5  to pass, even to get to the state of complaint.

6           In addition in considering this, I've also considered

7  both the complexity of the litigation and the potential

8  recovery, if any, as well as the defenses.  The issues

9  surrounding the failure of this debtor is complex.  In doing

10 so, as I indicated earlier, one must consider that Jefferson

11 was an owner and active in the company for a limited period of

12 time, barely two years before the filing, that during that time

13 within a short period after Jefferson found itself in an issue

14 where financials had to be restated, although the parties

15 disagree on the extent to which the chief operating -- one of

16 the chief officers from the prior period was removed for cause,

17 although the parties disagree as to why.  There is a criminal

18 investigation ongoing.  Although the parties disagree as to who

19 is responsible, there's no question that those were actions

20 that occurred before Jefferson arrived.  And most importantly,

21 that a pandemic occurred and of all the range of businesses

22 that were affected, the debtor's was one that was most

23 adversely affected, the nature of how it operated.

24           Given those issues, it would be complex to prove what

25 were the damages in addition to the other hurdles.  You would

*Colloquy*                                                    **Page 11**

1   also have the defense of the business judgment rule, as I

2   indicated before.  I've also considered the difficulty of

3   pursuing those claims in the current context.  The disputes

4   between the party would affect the -- any witnesses and their

5   credibility.  We have warring parties and we have warring

6   parties that are warring outside of this bankruptcy.  The two

7   principal objectors have claims against Jefferson in their

8   own -- pending in their own right.  So again, the Trustee would

9   be faced with the issue of who's going to present these claims.

10         I also considered the expense of litigation.  The

11   Trustee was involved in the *Necco* case (phonetic) and it is a

12   matter of public record.  That was a case where the Trustee in

13   Necco -- as a trustee of Necco -- was holding 15 million in

14   sale proceeds.  The trustee estimated the fees and expenses in

15   total were around three million and that the potential damages

16   were 100 million.

17         I did a quick check.  At a minimum I can confirm

18   there was roughly at least a million dollars in fees and -- and

19   I think this is no question because it's public record -- that

20   litigation never got very far.  It was still in early discovery

21   stages and the parties had already expended those amounts.

22         And, as I indicated before, the last element is the

23   element of the risk of loss.  The objectors consider that the

24   issue is simply that the -- you know, the Trustee would run up

25   the fees.  Well, trustees aren't required to pursue meritless

1  actions and, in fact, they run the risk of their own liability,

2  not in addition to the costs that are -- would be incurred by

3  the Trustee and his counsel.

4        But there's also the risk of potential upside for the

5  creditors and in particular for the priority creditors who

6  would come well ahead of any unsecured.  This was a debtor that

7  failed and had large consumer claims for deposits.  They may

8  ultimately receive nothing.  They may ultimately receive

9  something, but they must be satisfied.  And I believe when I

10 looked at the filings, simply based on the claims register and

11 the Trustee hasn't done his analysis, nor have I, simply in one

12 case, the main case, it was over $600,000 in priority claims.

13       I also am entitled to consider the experience of the

14 Trustee and I don't underestimate that.  I do think that this

15 is not a brand new trustee.  This is not somebody who is not

16 inexperienced.  In fact, it was his experience that the

17 objectors touted as the reason he should pursue litigation.  I

18 think that's appropriate for me to consider in terms of his

19 business judgment.  He's been a trustee in large cases and

20 small and I am more than willing to afford his business

21 judgment appropriate deference, given consideration of all the

22 other factors.

23       The last element, and I believe it's more important

24 in the Chapter 11 context, is the views of the creditors.  The

25 principal impartial creditors raised the same issue that I did,

1   which has now been addressed in the stipulation.  They were

2   smaller creditors, but they were impartial and their concern

3   was to preserve potential claims against the officers and

4   directors.

5          As I've said, the other creditors, they are entitled

6   to be heard, but I must take into account their self-interest

7   in their own agenda and I believe that can affect, particularly

8   when they have -- when I have considered all the other factors.

9          And I do note, as I may have said at the last

10  hearing, this was an involuntary.  There were several creditors

11  who filed, yet none of those.  They took the action to not only

12  file this litigation, but to seek a trustee.  None of those

13  believed this settlement was worth challenging and I take that

14  into account as well.  It doesn't mean I would approve it

15  without any objection.  I have an independent duty and I

16  believe that I have evaluated it fairly, and so for those

17  reasons, I will approve the settlement as amended.

18         So with that, we then turn to the fee applications

19  and so let me -- there were no objections.  The Court -- to

20  either fee application.

21         I do have some questions for you and, Mr. Murphy,

22  will you be responding to those or will Mr. Bennett?

23         MR. MURPHY:  I will, Your Honor, thank you.

24         THE COURT:  Okay.

25         MR. GREEN:  Excuse me, Your Honor.  As you noted, we

1  are not objecting.  May I be excused from the rest of the

2  hearing?

3          THE COURT:  Yes, Mr. Green, you are excused.

4          MR. GREEN:  Thank you, Your Honor.

5          THE COURT:  And hang on a second.  Let me find what

6  I'm looking for.  Apologies.  This might make my questions a

7  lot easier.

8          So, Mr. Murphy, on the application of the Trustee and

9  Murphy & King.

10         MR. MURPHY:  Yes, Your Honor.

11         THE COURT:  You are asking for -- these are all of

12 your fees during that period of which only a certain portion

13 will be paid as 506(c), is that correct?

14         MR. MURPHY:  Your Honor, there are other fees that

15 we've incurred that would not be subject to, if you will,

16 506(c) allowance.  I believe the amount of unbilled time for

17 this period, Your Honor, that we did not feel that were within

18 the realm of 506(c) were -- is about -- approximately $20,000,

19 Your Honor.  And we're reserving rights on that, but we're not

20 seeking approval of those at this time.

21         THE COURT:  So just to be clear, because we always

22 deal with -- we deal with the applications by period, so I

23 don't want to confuse that's -- that's where I want to be clear

24 on the record.  So I'm not suggesting you're waiving your right

25 to seek it.  So for the period of June 23, '20 to June 30,

*Colloquy*                                                                    **Page 15**

1    2021, you may have -- you may at a later date seek additional

2    fees that were incurred during that period.

3              MR. MURPHY:  That's correct, Your Honor.  And as I

4    say, it's somewhat allowed $20,000 that we have not sought

5    compensation.  We -- there was a negotiation of -- the

6    stipulation was negotiated, the fees were reviewed by counsel

7    for Jefferson.  And the negotiated amounts are set forth, the

8    amount for which we seek --

9              THE COURT:  All right.

10             MR. MURPHY:  -- 506(c) allowance pursuant to the

11   stipulations and payment from the sale proceeds and the

12   proceeds from the estate is a lesser amount than is the time

13   set forth in the application.

14             But beyond that, Your Honor, is that $20,000 that --

15             THE COURT:  Okay.  All right.  Just so it's clear on

16   the record.

17             MR. MURPHY:  Yes, Your Honor.

18             THE COURT:  So you're seeking 506(c) costs of

19   $130,000, I believe, is your -- have that number right?

20             MR. MURPHY:  That's correct.  It's a few -- I think

21   $5,000 or so of expenses, Your Honor, and I think the Trustee's

22   commission, if you will, is sought as a flat amount of $35,000,

23   which is less than the statutory amount.

24             THE COURT:  Okay.  Well, I have a question on that.

25   So you're asking me to seek -- to allow these fees with a

1   reservation of right at a later date to seek fees during this

2   period, but to provide for payment as 506(c) in the amount that

3   you've provided in the stipulation.

4           MR. MURPHY:  Correct, Your Honor.

5           THE COURT:  Okay.  All right.  Now, I have a question

6   on the commission.

7           MR. MURPHY:  Yes.

8           THE COURT:  What I didn't have in the application,

9   unless I missed it, I had your time entries, but I didn't have

10  how you calculated the commission.  So when I calculated based

11  on the 608 net proceeds you received, it was less than $35,000.

12  So I assumed there might have been -- you might have had a

13  different --

14          MR. MURPHY:  I believe we have other disbursements,

15  Your Honor, so -- but I will -- if you'd like, Your Honor, I

16  will file a supplement to the Trustee's application that laid

17  out my full receipts and disbursements during the course of the

18  case.  And whatever the statute says, that will -- that's all

19  we're seeking.

20          THE COURT:  That's fine.  That's -- I think that

21  would be helpful.  If you'd just give me a one line -- a one-

22  pager that says, this was what -- during this period, this is

23  what I disbursed.  This is in your -- your disbursements are --

24          MR. MURPHY:  Yeah.

25          THE COURT:  And I assume that you're calculating in

1  that the disbursement of the 608.

2          MR. MURPHY:  Correct, Your Honor.  And --

3          THE COURT:  And that's fine.  That's fine.  But --

4          MR. MURPHY:  For example, just -- as I recall, for

5  example, Mr. Saperstein (phonetic) was the auctioneer, Your

6  Honor, and there was fair amount of expenses.  So the funds I'm

7  holding is that of the allowed fees and expenses that we've

8  received -- we've already got authorization to pay that.

9          THE COURT:  And that's what I assumed that the

10 difference was, but I couldn't tell.

11         MR. MURPHY:  Understood.

12         THE COURT:  It might be in there, but I didn't --

13 looking through, I didn't see it.

14         So what I'll do is I have no problem approving it.

15 I'll ask you to file -- but I'll hold it for now until you file

16 the supplement.

17         MR. MURPHY:  Understood.

18         THE COURT:  And you're not required to file the

19 supplement on everybody.  Just on the parties who filed notice

20 of appearance.

21         MR. MURPHY:  Thank you, Your Honor.

22         THE COURT:  And how much time?

23         MR. MURPHY:  We can do that by Monday, Your Honor.

24         THE COURT:  That's fine.  All right.  So that takes

25 care of your application.

1           So now, Mr. Jalbert, I appreciated your application.

2   I did read through it and I know there was some confusion

3   over -- and I appreciated the supplement.  One of the things I

4   realized, and I think this may have been inadvertent, but the

5   application that was filed, the first application, the one that

6   is filed on record does not have any time entries.  It

7   references them, so I can only assume that when it got filed

8   for some reason, they inadvertently got omitted.

9           So -- and so my question for you -- because I -- and

10  I think that that just might have been an oversight, so I'm

11  happy to do the same thing on those fees for you that I will

12  that Mr. Murphy -- let me just go back to see where my

13  application is.  Hang on.  And so that was filed by

14  Mr. Murphy's office.  Ms. Cruickshank filed it and I think for

15  some reason when it got filed, your -- I don't have Exhibits 1

16  and 2.

17          MR. JALBERT:  Well, and, Your Honor, it looks -- we

18  usually have four exhibits:  the order itself, the time run,

19  the bios of the particular individuals working, and the fourth

20  would be out-of-pocket expenses.  So it's very clear -- now I'm

21  looking at this for the first time -- that all the exhibits are

22  missing.

23          THE COURT:  Okay.  So -- and so let me -- so let me

24  ask the question -- ask the questions and then similar to with

25  Mr. Murphy I'll have -- Mr. Murphy's office can file a

1  supplement with those exhibits and then I won't need a further

2  hearing.

3          So does this -- and I realize there's a supplement.

4  Let's just deal with the main one.  The supplement did have all

5  the exhibits, by the way, so I'm fine with the supplement.

6  This exhibit -- and is this the same case, that during this

7  period of time this represents only a portion of the fees?

8  You're reserving the right to seek additional fees for that

9  period that weren't related to 506(c)?

10          MR. JALBERT:  Yes, Your Honor.  And our fees -- there

11  was a considerable amount of fees that the Trustee and his

12  counsel felt were not appropriate as to 506(c).  And I'm not

13  going to try and understand what's in and what's out there, but

14  our fees are considerably larger.  I don't know the exact

15  number, but it's more like in the $80,000 range.  I'm not

16  saying we're ever going to do anything.  I am reserving my

17  rights similar to what the Trustee did and towards the end of

18  the case, we'll figure that out.

19          THE COURT:  Okay.  All right.  So -- but unlike

20  Mr. Murphy's, the allowance here -- all of the fees in your

21  backup are going to be paid as 506(c)'s, all the fees in the

22  application?

23          MR. JALBERT:  In the original application, yes.  In

24  the supplemental, a little bit different.

25          THE COURT:  Okay.

1            MR. JALBERT:  Not 506(c).

2            THE COURT:  Well, that's -- we'll turn to that.  So I

3   just want to make sure the record is clear so that --

4   presumably I'm the same judge at the end, but judges change, so

5   that when we get down --

6            MR. JALBERT:  Yes, Your Honor.

7            THE COURT:  -- that somebody doesn't come in and say,

8   well, you already filed a fee application for that period, why

9   are you -- why -- I'm not going to allow any additional fees.

10           All right.  So the first interim we need a supplement

11   on.  On the supplement, I did -- let me find that -- I did

12   review -- hang on a second.  Just give me a second.  It's

13   wonderful to have all this technology.  Ah, here it is.

14           I did read the supplement and so in that one you --

15   there was a specific amount that Jefferson paid and you're not

16   reserving the right to seek the additional fees from the

17   estate.  Is that correct?

18           MR. JALBERT:  Not as it relates to the 2019 tax

19   return, Your Honor, where we incurred roughly 13 or $14,000

20   that we have no intention of ever billing, as I said in the

21   supplement.  But we also did the 2020 tax return, which we

22   referred to in here that we do plan on billing Jefferson and

23   filing a fee application to recover those fees.

24           THE COURT:  Okay.  So the 2020 you have -- have you

25   billed -- you haven't billed Jefferson yet?

1          MR. JALBERT:  Correct.  I'm waiting for the result of

2   this hearing before I -- so I can make sure I understand what I

3   need to do.

4          THE COURT:  Okay.  All right.  So I think it is

5   the -- you know, similar.  You can file -- as long as there's a

6   fee application seeking the allowance of those costs as 506 --

7   they're in essence 506(c), although the parties agreed.  Is

8   that -- because they're costs incurred for the benefit of

9   Jefferson.  Correct?

10         MR. JALBERT:  Yes, Your Honor.  Yes.

11         THE COURT:  All right.  All right.  So I'm satis --

12         MR. JALBERT:  That was my confusion.

13         THE COURT:  Right.  I'm satisfied with -- so you're

14  seeking -- so it's the 38,183.90, plus the 2448, that would be

15  for the 2019 tax return and you may have additional fees for

16  the 2020.

17         MR. JALBERT:  Correct.

18         THE COURT:  Okay.  And the original application

19  you're going to give me a supplement so I can check the fees

20  and expenses, but the amount is the $21,470.50 and 2116.04 and

21  a reservation of right to seek additional services incurred --

22  rendered during that period.

23         MR. JALBERT:  Yes, Your Honor.

24         THE COURT:  Okay.  All right.  So how much time to

25  file the supplement, Mr. Jalbert?

1          MR. JALBERT:  I will have them emailed to Trustee and

2  his counsel before the end of the day.

3          THE COURT:  So Mr. Murphy, another -- Monday?

4          MR. MURPHY:  Monday, Your Honor, so we'll make sure

5  we just keep everything the same way.

6          THE COURT:  All right.  All right.  So with both of

7  those, I'll rule on them after receiving the supplements, but I

8  don't anticipate any issues.  I just want to make sure we've

9  got all the paperwork in.

10          All right.  All right.  Thank you.  With that is

11 there anything further?

12          MR. MURPHY:  No, Your Honor.  Thank you very much.

13          THE COURT:  All right.

14          ATTORNEYS:  Thank you, Your Honor.

15          THE COURT:  Thank you, all.  With that, this hearing

16 is concluded and I believe court is adjourned for the day.

17 Thank you all.

18 (End at 3:31 p.m.)

19                    * * * * * * *

20

21

22

23

24

25

1         I certify that the foregoing is a true and accurate

2    transcript from the digitally sound-recorded record of the

3    proceedings.

*Ruth Ann Hager*

_____    11/30/2021

**RUTH ANN HAGER**
**Certified Transcriber**
        **Federal C.E.R.T. **D-641**
**CASCADE HILLS TRANSCRIPTION, INC.**
5001 Woodland Hills Drive
Eagle, Nebraska 68347
(503) 871-5566
Email: hagerruthann@aol.com