**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: <br><br> **LEGACY GLOBAL SPORTS, L.P.,** <br><br> **Debtor.** | ) <br> ) <br> ) **Chapter 7** <br> ) **Case No. 20-11157-JEB** <br> ) <br> ) <br> ) |

### OBJECTION BY CHAPTER 7 TRUSTEE TO CLAIM OF WILLIAM BRANDT
*(Claim No. 224-1)*

Harold B. Murphy, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Legacy Global Sports, L.P. (the "Debtor" or "LGS"), hereby objects (the "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure and Rule 3007-1 of the Massachusetts Local Bankruptcy Rules, to the allowance of the asserted claim of William Brandt (the "Claimant"), claim number 224-1 on the Court's Claims Register (the "Disputed Claim"), on the basis of both its asserted amount and asserted priority, including that: (i) the Disputed Claim includes a claim for severance pay which may exceed the cap imposed by 11 U.S.C. § 502(a)(7), and further, that claim is not entitled to priority status under Sections 507(a)(3) or (a)(4) of the Bankruptcy Code, because it arises from the termination of a pre-petition employment contract; and (ii) the Claimant has no claim under the WARN Act because LGS was excepted from its application, and further, even if the Claimant had a WARN Act claim, that claim would not be not entitled to priority and would be subject to the cap of Section 502(a)(7). In support of this objection, the Trustee states as follows:

**BACKGROUND**

1. On May 20, 2020 (the "Petition Date"), certain of the Debtor's creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against LGS and an order for relief was entered on June 23, 2020.

2. The Trustee is the duly appointed Chapter 7 trustee of LGS.

The Disputed Claim

3. The Disputed Claim is asserted in the amount of $41,981.96. The Claimant asserts that the entire amount of the Disputed Claim is an unsecured, priority claim pursuant to 11 U.S.C. § 507(a)(3). The Claimant also appears to assert that $13,650 of the Disputed Claim is entitled to priority claim under 11 U.S.C. § 507(a)(4).

4. The Disputed Claim arises from an Employment Agreement dated September 12, 2018 by and between LGS and the Claimant (the "Agreement"). The Agreement provided for a two year initial term (the "Initial Term"). The Claimant asserts that he was furloughed and then terminated on March 24, 2020 during the Initial Term, on June 19, 2020, "without cause" as defined in the Agreement.

5. Claimant was furloughed without pay, and as such may have been terminated for cause and not entitled to further amounts due.

6. The Agreement provides, in relevant part, that in the event that the Claimant is terminated during the Initial Term without cause, LGS "will continue to pay [the Claimant] his then existing Annual Base Salary and reimburse him for any healthcare or medical premiums associated with the continued coverage for the remainder of such term." Agreement, ¶ 5c.

7. The Disputed Claim contains two elements: (i) a claim for severance pay based on the Claimant's asserted termination without cause, in an amount equal to the remaining

2

unpaid amounts under the Agreement, which Claimant states is "at least $28,188.56 (which includes $14,342.36 for the furlough period plus $13,846.20 for the period after employment termination through the end of the Initial Term) plus reimbursement for any remaining healthcare or medical premiums associated with continued coverage for the remainder of the Initial Term"; and (ii) a WARN Act claim for back pay and benefits due for sixty days totaling at least $13,793.40 "plus reasonable attorneys' fees, damages and other amounts as may be awarded…"

8. The Trustee objects to the amounts and the asserted priority of each element of the Disputed Claim as set forth herein.

## Objections

**A. Objection to the Asserted Amounts of the Disputed Claim**

(1) <u>Asserted Amount of Severance Claim</u>

9. The majority of the Disputed Claim consists of damages asserted in connection with the termination of the Agreement.

10. Claims arising from the termination of an employment contract are subject to the cap imposed by 11 U.S.C. § 502(b)(7), which provides, in relevant part, that a "claim of an employee for damages resulting from the termination of an employment contract" may not exceed:

> (A) the compensation provided by such contract, without acceleration, for one year following the earlier of (i) the date of the filing of the petition; or (ii) the date on which the employer directed the employee to terminate, or the employee terminated, performance under such contract; plus
>
> (B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates.

3

11. Section 502(b)(7) applies whether the termination occurred before or after the petition date. See, e.g. *In re 21st Century Oncology Holdings, Inc.*, 597 B.R. 217, 226, n. 7 (Bankr. S.D.N.Y. 2019). The cap provided by Section 507(b)(7) "reflects Congress's intent to protect a debtor's estate, and in particular, other creditors of the debtor, from being burdened by exorbitant breach of employment claims." *In re Fairpoint Communs., Inc.*, 445 B.R. 271, 274 (Bankr. S.D.N.Y. 2011), citing, *In re Murray Indus., Inc.*, 114 B.R. 749, 752 (Bankr.M.D. Fla. 1990).

12. The Claimant is an employee who asserts a claim for damages resulting from the termination of an employment contract, such that Section 507(b)(7) expressly applies to her claim. The Claimant has not asserted a claim for unpaid wages at the time of termination. As a result, the Claimant's claim is capped at $60,000, or one year's salary.

(2) <u>Asserted WARN Act Claim</u>

13. The Claimant asserts a claim for the Debtor's alleged violations of the Worker Adjustment and Retraining Notification ("<u>WARN</u>") Act, 29 U.S.C. §§ 2101-2102. The Debtor was not an employee subject to the WARN Act, however, due to the fact that it had less than fifty employees in Massachusetts in 2020. 29 U.S.C. §§ 2102(a), 2101(a)(1)-(3).

14. Further, in laying off its employees, the Debtor faced unforeseeable circumstances such that the WARN Act did not apply. 29 U.S.C. §§ 2102(b)(2)(A). LGS noted in a communication to employees that it was forced to terminate employees due to, among other things: (i) the sudden and unexpected impact of the COVID-19 pandemic, which caused a severe disruption in the youth sports industry, including as a result of the unknown and varied length of different states' restrictions on public gatherings; (ii) an involuntary petition that had been filed

by certain creditors; and (iii) LGS's unsuccessful attempts to secure one or more buyers for its business.

**B.    Objection to Asserted Priority of Disputed Claim**

    (1)    <u>Objection to Asserted Priority of Severance Claim</u>

15.    Assuming that the Claimant was terminated without cause on the date stated, the Claimant was terminated by LGS during the so-called gap period, after the involuntary petition was filed and before an order for relief was entered.  Pursuant to 11 U.S.C. § 303(f), "[n]otwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire and dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f).  As such, the Debtor was within its rights to terminate the Agreement during the gap period without Court authority.

16.    The claim for the unpaid balance owed under the Agreement constitutes an unsecured, non-priority claim for severance.  The claim is not based upon years of service or termination in lieu of notice; rather, it was fully earned when the Claimant signed the Agreement in 2018.  See, e.g., *In re M Group, Inc.*, 268 B.R. 896, 903-04 (Bankr. D. Del. 2001)(severance provisions based on salary following termination without cause, rather than length of service or notice periods, are fully earned when the agreement is signed and are therefore not entitled to administrative or priority status).

17.    Even if the Claimant's severance pay was considered to have been earned on the day of her termination, the breach giving rise to claim would be considered to have occurred the day before the Petition Date.  In the case of *In re Ellipsat, Inc.*, 40 B.R. 1, 11 (Bankr.D.C. 2012), the employee asserted an administrative severance claim arising from post-petition termination,

without cause, of a prepetition employment agreement. In that case, the Court found that the severance pay was earned upon termination, however, pursuant to the application of 11 U.S.C. §§ 365(g) and 507(a)(4), termination was considered to have occurred the day prior to the bankruptcy filing such that the employee was entitled, at best, to an unsecured, priority claim under Section 507(a)(4).

18. Unlike the employee in *Ellipsat*, the Claimant relies upon section 507(a)(3) in support of the asserted priority of the Disputed Claim, which grants priority to unsecured claims allowed under 11 U.S.C. § 502(f). Section 502(f) provides:

> (f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b) or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the petition.

11 U.S.C. § 502.

19. As stated above, the statute treats claims arising in the "gap" period "as if such claims had arisen before the date of the filing of the petition." *Id*. Section 507(a)(3) grants priority to holders of gap claims for "claims arising in the ordinary course of the debtor's business or financial affairs". 11 U.S.C. § 507(a)(3).

20. The Claimant's reliance on Sections 502(f) and 507(a)(3) are misplaced for at least two reasons: (i) the Disputed Claim arises from the termination of a pre-petition employment contract; and (ii) even if the Court considered Section 502(f) to be applicable, the Claim did not arise from an ordinary course transaction.

21. Section 502(f) "is intended to protect the creditors who deal with an involuntary debtor during the gap period, such as lessors, trade creditors and similar parties, consistent with section 303(f)'s specific authority allowing an involuntary debtor to conduct its business in an

6

ordinary manner while its ultimate status is adjudicated." *In re Mfr.'s Supply Co.*, 132 B.R. 127, 129 (Bankr. N.D. Ohio 1991) (citing S. Rep. No. 95-989, 95th Cong., 2d Sess. *65, reprinted in 197 U.S.C.C.A.N. 5787, 5851*) (rent payment falls within the common understanding of ordinary course obligations) (additional citation omitted). *See also, In re Seven Three Distilling Co., LLC*, (2022 Bankr. LEXIS 2351 (August 24, 2022) (legal work commenced to challenge involuntary petition is not a debt arising in the ordinary course of a debtor's business).

22. The severance claim is not a claim that arose in the ordinary course of the Debtor's business, nor is it the type of creditor claim that Congress intended to protect.

23. Granting the Claimant an unlimited priority claim under Section 507(a)(3) on account of her severance claim would defeat Congress' express intent in capping employment claims under Section 502(b)(7). Further, although decided prior to the enactment of the Bankruptcy Code, the First Circuit's opinion in *In re Mammoth Mart*, 536 F.2d 950 (1st Cir. 1976) lends support to limiting priority granted to severance pay claims, noting "[i]f one claimant is to be preferred over others, the purpose should be clear from the statute." *Id.* at 953 (citations omitted). "To give priority to a claimant not entitled thereto is not only inconsistent with the policy of equality of distribution, it dilutes the value of the priority for those creditors Congress intended to prefer." *Id*.

(2) <u>Objection to Asserted Priority of WARN Act Claim</u>

24. Even if the WARN Act had applied to the Debtor, any WARN Act claim held by the Claimant is subject to the cap of Section 502(b)(7). See, e.g., *In re Fairpoint Communs., Inc.*, 445 B.R. 271, 274 (Bankr. S.D.N.Y. 2011) (Section 507(b) applies to any claim stemming from termination of employment contract, including age discrimination claim arising from the Age Discrimination and Employment Act of 1967). See also *In re Wheeling-Pittsburgh Steel*

*Corp.*, 113 B.R. 187, 193 (Bankr. W.D. Pa. 1990), rvs'd on other grounds (Section 507(b)(7) applies to cap a National Labor Relations Act claim despite it being a remedial statute).

25. <u>Recommended treatment</u>:  For the reasons set forth herein, the Trustee recommends that the Court allow the Disputed Claim as an unsecured, non-priority claim in the amount of $41,981.96 and disallow the balance of the Disputed Claim.

### RESERVATIONS

26. This objection is subject to the following general objections and reservations:

   a. Nothing in this Objection constitutes a waiver of any right of the Trustee to assert claims or causes of action against any claimant or any other party including, without limitation, any rights of setoff or recoupment.

   b. Nothing in this Objection shall constitute a waiver of any right of the Trustee to object to any other claims asserted against the Debtors not included in the objection, or to supplement, amend, or assert additional bases for objecting to the Disputed Claim.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order:

A. Sustaining the objection to the Disputed Claim and expunging the Disputed Claim as a claim against LGS and the Estates; and

B. Granting such other relief as is just and proper.

HAROLD B. MURPHY,
CHAPTER 7 TRUSTEE OF
LEGACY GLOBAL SPORTS, LP, et al.,

By his counsel:

*/s/ Kathleen R. Cruickshank*
Kathleen R. Cruickshank (BBO# 550675)
Murphy & King, Prof. Corp.
28 State Street, Suite 3101
Boston, MA 02109
(617) 423-0400
Email:  kcruickshank@murphyking.com

DATED:  March 19, 2025